UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHOICE LONG ISLAND, INC,<br>Plaintiff,<br>v.<br>PFLUG PACKAGING & FULFILLMENT, INC., et al.,<br>Defendants. | No. 2:24-cv-02476-DAD-SCR<br><br>TENTATIVE PRETRIAL ORDER |

On July 27, 2026, the court conducted a final pretrial conference in this case. Attorney Nicholas Maxwell appeared as counsel for plaintiff and attorney Evan Nelson appeared as counsel for defendants Pflug Packaging & Fulfillment, Inc. and Pflug Packaging-Georgia, Inc. Having considered the parties' joint pretrial statement and the views of the parties as expressed at the conference, the court issues this tentative pretrial order.

Plaintiff brings this breach of contract action against defendants, with claims arising under California and Georgia state law.

I. JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1332. Jurisdiction is not contested.

Venue is proper pursuant to 28 U.S.C. § 1391(b). Venue is not contested.

II. JURY

Both parties have demanded a jury trial. The jury will consist of seven jurors.

III. UNDISPUTED FACTS

1. Plaintiff provides the following staffing services: (1) recruiting; (2) screening; (3) interviewing; and (4) assigning qualified contract employees to provide work for commercial clients.

2. On February 22, 2022, plaintiff, through Paul Pflug, transmitted to defendants a proposed master staffing agreement which set out the proposed terms of the parties' staffing relationship along with a letter setting forth pricing terms. Neither Paul Pflug nor anyone authorized to sign contracts on behalf of defendants signed the master services agreement.

3. The proposed master staffing agreement provided, in pertinent part, that the parties' relationship could be cancelled by either party upon sixty (60) days' notice. The master staffing agreement further provided that defendants were prohibited from transferring plaintiff's temporary employees to another staffing agency for a period of six (6) months following the end of any such employee's assignment or termination date. Failure to comply with this prohibition would result in a collectable fee of 18% of the annual base salary being due on each affected candidate.

4. After engaging in further discussions and negotiations on the pricing terms, plaintiff transmitted a revised rate agreement which set forth revised pricing terms to defendants. On or about March 2, 2022, Paul Pflug, in his capacity as the owner and authorized representative of defendants, executed and returned to plaintiff the revised rate agreement setting forth pricing terms applicable to plaintiff's staffing services, which included a 26.5% markup on plaintiff-supplied labor. Defendants never signed the terms of the master staffing agreement.

5. From March 2022 to July 2023, plaintiff supplied defendants with temporary workers at defendants' California and Georgia facilities.

6. Defendants accepted and used CLI's temporary workers in the ordinary course of business. Defendants fully paid CLI for the staffing services provided pursuant to the parties' course of dealing, including the 26.5% markup on labor provided in the signed rate sheet.

7. On July 7, 2023, defendants terminated their relationship with plaintiff.

8. Defendants did not provide sixty (60) days' notice of termination.

## IV. DISPUTED FACTUAL ISSUES

**Plaintiff's disputed factual issues:**

1. By executing the rate agreement and subsequently accepting plaintiff's staffing services and paying invoices in accordance with those terms, defendants manifested assent to the terms governing the parties' staffing relationship, including: (1) CLI's pricing terms; (2) the sixty-day notice requirement; (3) the six-month restriction on transferring CLI's temporary employees to another staffing agency following the end of their assignments or upon termination of the agreement; and (4) the master staffing agreement's provision that failure to comply with the six-month prohibition results in a collectable fee of 18% of the annual base salary being due on each affected candidate.

2. Defendants never objected to the terms of the master staffing agreement, never requested any modifications to the agreement, and consistently accepted CLI's temporary workers and paid CLI's invoices in accordance with the master staffing agreement.

3. On July 6, 2023, Paul Pflug, acting on behalf of the defendants, called CLI's then-acting Executive Vice President of Sales Tiffany Lewis and informed her that Empire Workforce Solutions ("Empire") would be transitioning all of plaintiff's temporary associates at defendants' facilities on the following day. Pflug also informed Lewise that Empire was offering a 22% markup on labor, compared to plaintiff's agreed 26.5% markup.

4. On July 7, 2023, defendants distributed a form to plaintiff's temporary employees at the end of their shift for those employees to sign. That form, on Pflug Packaging & Fulfillment letterhead, stated: "Hello, I ___ was informed that today 7/7/23 my assignment at Pflug Packaging with my agency ___ has ended," with the assumption that plaintiff's name would be placed in the second blank space. Defendants provided the form in English only and without explanation. Employees were directed to sign the form and report to the Empire desk to complete an application.

**Defendants' disputed factual issues:**

1. Defendants did not sign any contract which contains the terms that plaintiff is seeking to enforce and dispute assenting to such terms in writing or by authorized conduct.

2. Neither plaintiff nor defendants signed the master staffing agreement.

3. Defendants fully paid for all staffing services actually used in accordance with the rate sheet that was signed. Defendants did not pay plaintiff's invoicing for terms in the master staffing agreement to which they did not agree or assent.

4. On or about July 6, 2023, defendants informed plaintiff that they would no longer be using plaintiff's staffing services after July 7, 2023. Defendants did not use plaintiff's staffing services after July 7, 2023. Defendants fully paid plaintiff for all staffing services actually used, including the 26.5% markup.

## V. DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have not yet filed motions *in limine*.[1] The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial. Any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial**. Opposition shall be filed no later than **14 days before trial** and any replies shall be filed no later than **10 days before trial**. Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions *in limine* prior to the first day of trial.

## VI. SPECIAL FACTUAL INFORMATION

Pursuant to Local Rule 281(b)(6), the parties have provided the special factual information pertaining to this action in the appropriate section above for undisputed facts or disputed factual issues above. The parties also provide the following information in accordance with Local Rule 281(b)(6):

/////

/////

/////

[1] Defendants state that they anticipate objecting to several evidentiary issues at trial. (Doc. No. 35 at 5.) At the final pretrial conference, defendants indicated that they do not presently believe that these objections will need to be resolved through motions *in limine*. Nonetheless, and as noted at the final pretrial conference, the parties are directed to list any specific motions *in limine* that they intend to bring at this time in their objections to this tentative order.

**(A) The parties' respective versions of the terms of the contract.**

Plaintiff alleges that the Master Staffing Agreement transmitted to Defendants on February 22, 2022 establishes the terms of the contract. The Master Staffing Agreement transmitted by CLI to Defendants on February 22, 2022 included, among other provisions: a 600-hour temp-to-free-hire program under which Defendants could convert CLI's temporary employees to permanent hires without a fee after 600 hours of service, together with a graduated conversion fee schedule for earlier conversions; a provision that all temporary workers supplied by CLI would remain employees of CLI during their assignments unless and until converted to Defendants' payroll as their full-time employee; a six-month prohibition on transferring CLI's temporary employees to another staffing agency, with noncompliance resulting in a collectable fee of eighteen percent (18%) of the annual base salary being due on each affected candidate; and invoicing and payment terms requesting payment within net 30–45 days of the service date.

Defendants contend that the lack of a signature on the Master Staffing Agreement indicates lack of assent to the terms of the Master Staffing Agreement and that the only enforceable contract was for the provision of temporary staffing solutions for which Defendants fully paid. No one authorized by Defendants ever assented to the additional terms of the Master Staffing Agreement and payment of invoices does not constitute assent to additional contractual terms, as a matter of law. Defendants further contend that Plaintiff had a duty to mitigate damages, in any event, and the additional terms constitute unenforceable penalty clauses under applicable law.

**(B) Whether the contract and any modifications or collateral agreements were written or oral or both, specifying any document, letter, or other writing relied upon by date and parties, and indicating any oral agreement relied upon by date, place, and parties.**

Plaintiff does not allege there were any modifications or collateral agreements. Defendants contend that the only contract was an implied-in-fact contract for use of Plaintiff to provide temporary staffing and that such contract was satisfied, in full, by Defendants.

**(C) Any misrepresentation of fact, mistake, or other matter affecting validity.**

Plaintiff does not allege any misrepresentation of fact, mistake, or other matter affecting validity. Defendants submit that they did not understand Plaintiff's purported belief that temporary staffing provided by Plaintiff was only available under the terms of the unsigned Master Staffing Agreement; such created a mistake that Plaintiff should have corrected by either requiring signature on the Master Staffing Agreement and/or by not providing temporary staffing workers unless/until a signature was obtained.

/////

**(D) Any breach of contract.**

Plaintiff alleges Defendants breached the contract by terminating Plaintiff's workforce and ceased using Plaintiff's staffing services effective immediately, without providing the required sixty (60) days' prior notice, and distributed forms to Plaintiff's temporary employees for those employees to sign, acknowledging that their assignments with their agency had ended and directing them to report to Empire Workforce Solutions. By doing so, Defendants transferred Plaintiff's workforce to another staffing agency in violation of the parties' agreement's six-month transfer restriction and breached the Master Staffing Agreement.

Defendants allege that the only valid contract with mutual assent was for provision of temporary staffing workers that were provided at a specific rate including Plaintiff's 26.5% markup, and for which Defendants fully satisfied their obligations by making payment. There was no authorized assent for anything more. Moreover, the additional payment clauses Plaintiff is attempting to enforce through this action are unenforceable penalties in addition to lacking mutual assent; and Plaintiff has not shown they mitigated their alleged damages.

**(E) Any waiver or estoppel.**

Plaintiff alleges that, beginning in approximately March 2022 and continuing through July 2023, Defendants accepted Plaintiff's temporary workers, used those workers in its operations, and paid Plaintiff's invoices as agreed and without objection. Defendants never objected to any term of the Master Staffing Agreement, including the sixty-day notice requirement and the six-month transfer restriction. Plaintiff signed the Rate Letter that made specific reference to the terms contained in the Master Staffing Agreement but did not object to any term contained in the Master Staffing Agreement. In July 2023, Plaintiff immediately notified Defendants that they were in breach of their agreement and Defendants never asserted that they were not bound by the Master Staffing Agreement until they filed an Answer to Plaintiff's Complaint in this matter. Defendant submits that as a matter of law, payment of an invoice does not provide assent to additional contract terms. Defendants contracted for temporary workers and paid Plaintiff for those workers, inclusive of Plaintiff's 26.5% markup. By providing temporary workers without signature on, or authorized assent to, the terms of the Master Staffing Agreement, Plaintiff waived those terms. Similarly, estoppel acts to prevent Plaintiff from asserting additional contract terms as they induced Defendants to pay the 26.5% markup on the temporary workers wages based solely on the signed rate sheet, without signature or assent to the additional terms on the Master Staffing Agreement.

/////

/////

/////

**(F) The relief sought (recission, restitution, damages for breach, specific performance, etc.).**

Plaintiff seeks damages for Defendants' breach of the contract. Plaintiff alleges it suffered damages including, but not limited to, lost staffing revenue that Plaintiff would have earned during the sixty-day notice period, and the fee of eighteen percent (18%) of the annual base salary due on each affected candidate. Defendants assert that the damages Plaintiff seeks are an unenforceable penalty, rather than liquidated damages, and there was no authorized assent to such terms in the unsigned Master Staffing Agreement. Plaintiff also was required to mitigate damages.

(Doc. No. 35 at 5–8.)

VII. RELIEF SOUGHT

1. Plaintiff seeks damages for breach of contract.

VIII. POINTS OF LAW

The claims and defenses asserted in this action arise under California and Georgia state law. Plaintiff's first, second, and third claims are brought against defendant Pflug Packaging & Fulfillment, Inc., and plaintiff's fourth, fifth, and sixth claims are brought against Pflug Packaging-Georgia, Inc. (Doc. No. 18 at ¶¶ 20–31.) Those claims and subjects to be addressed in the parties' trial briefs are as follows:[2]

1. The elements of, standards for, and burden of proof in an action for breach of contract under California law, brought against Pflug Packaging & Fulfillment, Inc.
2. The elements of, standards for, and burden of proof in an action for account stated under California law, brought against Pflug Packaging & Fulfillment, Inc.

/////

/////

[2] As discussed at the final pretrial conference, the claims listed in this section are derived from plaintiff's first amended complaint because the points of law section in the joint pretrial statement only provides a general overview of California and Georgia law regarding contract formation, defenses to breach of contract claims, and damages. (Doc. No. 35 at 8–13.) In that first amended complaint, plaintiff asserts six independent claims for breach of contract, account stated, and implied-in-law contract against both defendants under California and Georgia law. Plaintiff is directed to indicate in its objections to this tentative order what causes of action—including any corresponding statutory provisions under which those claims may be brought—it is proceeding on at trial and what, if any, causes of action it has abandoned.

3. The elements of, standards for, and burden of proof in an action for an implied-in-law contract under California law, brought against Pflug Packaging & Fulfillment Inc.

4. The elements of, standards for, and burden of proof in an action for breach of contract under Georgia law, brought against Pflug Packaging-Georgia, Inc.

5. The elements of, standards for, and burden of proof in an action for account stated under Georgia law, brought against Pflug Packaging-Georgia, Inc.

6. The elements of, standards for, and burden of proof in an action for an implied-in-law contract under Georgia law, brought against Pflug Packaging-Georgia, Inc.

Trial briefs addressing the points of law implicated by these remaining claims shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED AND DEEMED WAIVED.

## IX. ABANDONED ISSUES

1. Attorneys' fees for plaintiff.[3]

## X. WITNESSES

Plaintiff's witnesses shall be those listed in **Attachment A**. Defendants' witnesses shall be those listed in **Attachment B**. Each party may call any witnesses designated by the other.

A. **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

/////

[3] As discussed at the final pretrial conference, defendants have asserted nineteen affirmative defenses in their answer to plaintiff's first amended complaint. (Doc. No. 21 at 7–11.) However, in the joint pretrial statement, defendants have only provided a general overview of California and Georgia state law regarding various defenses to a breach of contract action without explicitly indicating what affirmative defenses they are proceeding with at trial and what defenses they have abandoned. (Doc. No. 35 at 10–13.) Accordingly, defendants are directed to indicate in their objections to the tentative pretrial order which affirmative defenses they are proceeding with at trial and which affirmative defenses they have abandoned, if any.

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

(2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

B. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses by filing a notice on the docket so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

(1) The witness could not reasonably have been discovered prior to the discovery cutoff;

(2) The court and opposing parties were promptly notified upon discovery of the witness;

(3) If time permitted, the party proffered the witness for deposition; and

(4) If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

## XI. EXHIBITS, SCHEDULES, AND SUMMARIES

Plaintiff's exhibits are listed in **Attachment C**. Defendant's exhibits are listed in **Attachment D**. No exhibit shall be marked with or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits and to provide a list of joint exhibits. All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.[4] Plaintiff's exhibits shall be listed numerically, and defendants' exhibits shall be listed alphabetically.

[4] As noted at the final pretrial conference, defendants' exhibit list appears to overlap with plaintiff's exhibit list. Accordingly, the parties are directed to provide in their objections a list of joint exhibits in accordance with this order. In addition, the parties may elect to adopt the numbering used at depositions in connection with their joint exhibit list.

The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall have an identification label on the front and spine. The parties must exchange exhibits no later than **28 days before trial**. Any objections to exhibits shall be filed no later than **14 days before trial**. The final exhibit binders shall be delivered to the court by **the Thursday before the trial date.** In making any objection, the party is to set forth the grounds for the objection. As to each exhibit which is not objected to, no further foundation will be required for it to be received into evidence, if offered.

**The court does not allow the use of undisclosed exhibits for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria:**

A. The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

(1) The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

(2) The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

B. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

(1) The exhibits could not reasonably have been discovered earlier;

(2) The court and the opposing parties were promptly informed of their existence;

(3) The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

XII. DISCOVERY DOCUMENTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**.

The parties have indicated the intent to use the following discovery documents at trial:[5]

1. Plaintiff's Initial Disclosures
2. Defendant's Initial Disclosures
3. Plaintiff's Responses to Interrogatories
4. Plaintiff's Responses to Requests for Production of Documents
5. Defendant's Responses to Interrogatories
6. Defendant's Responses to Requests for Production of Documents
7. Deposition Transcript of Person(s) Most Qualified for Pflug Packaging & Fulfillment, Inc. and Pflug Packaging-Georgia, Inc.

XIII. FURTHER DISCOVERY OR MOTIONS

None. Discovery and law and motion are closed under the scheduling order issued in this case.

XIV. STIPULATIONS

None at this time.

XV. AMENDMENTS/DISMISSALS

None.

XVI. SETTLEMENT

The parties have not engaged in any settlement efforts. However, the parties state that they are willing to participate in a court ordered settlement conference.

Accordingly, the parties are ordered to **immediately** contact the chambers of the assigned magistrate judge for the setting of a settlement conference prior to the trial of this case. Depending on the assigned magistrate judge's settlement conference procedures, the assigned magistrate judge may hold the settlement conference or may arrange for a different magistrate

[5] As noted at the final pretrial conference, the parties are directed to provide more precise descriptions of discovery documents 3–7 in their objections to this tentative order.

judge to hold the settlement conference. The parties are instructed that a settlement conference date must be set **within twenty-one days** of the date of issuance of this tentative order.

XVII. JOINT STATEMENT OF THE CASE

The parties have agreed to the following joint statement of the case:

> Plaintiff Choice Long Island, Inc. ("Plaintiff") provides temporary staffing to companies. Defendant Pflug Packaging & Fulfillment is a company doing business in the state of California. Defendant Pflug Packaging-Georgia is a wholly owned subsidiary of Pflug Packaging & Fulfillment doing business in the state of Georgia.
>
> In 2022, Plaintiff and Defendants had discussions that contemplated Plaintiff providing temporary staffing to Defendants' California and Georgia locations. Plaintiff sent a contract to Defendants and a rate sheet. Defendants signed the rate sheet but not the contract. From March 2022 through July 2023, Plaintiff provided Defendants with temporary staffing services and Defendants paid Plaintiff for those staffing services, including their 26.5% markup.
>
> Plaintiff claims that Defendants breached the terms of the contract when they terminated the contract on July 7, 2023 by failing to provide the requisite notice and by transferring their temporary workers to a different staffing company. Defendants deny that they breached any terms of an implied contract; that they fully paid for all services rendered including payment for all temporary workers wages and Plaintiff's 26.5% markup; and claim that they did not assent to the terms of the unsigned Master Services Agreement, which they allege contains unenforceable penalty provisions.

(Doc. No. 35 at 1–2.)

XVIII. SEPARATE TRIAL OF ISSUES

Plaintiff does not request separate trials on any issue or bifurcation of the trial. (*Id.* at 15.) Defendants state that they are amenable to bifurcation of the following legal issues: (1) mutual assent to contract terms; (2) unenforceability of a liquidated damages provision that operates as a penalty; (3) failure to mitigate; and (4) any other issues that may expedite the closure of this action. (*Id.*) The court declines defendants' invitation to bifurcate these issues for purposes of trial.

XIX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

/////

/////

XX. ATTORNEYS' FEES

Plaintiff will not seek attorneys' fees and costs.[6]

XXI. TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

None.

XXII. MISCELLANEOUS

None.

XXIII. ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is scheduled for **October 6, 2026**, at 9:00 a.m. in Courtroom 4 before the Honorable Dale A. Drozd. Trial is anticipated to last not more than four to five court days. The parties are directed to Judge Drozd's Standing Order in Civil Actions, available on his webpage on the court's website.

Counsel are directed to contact Pete Buzo, courtroom deputy, at (916) 930-4016, no later than one week prior to trial to ascertain the status of the trial date.

XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

The parties shall file any proposed jury *voir dire* **7 days before trial**. Each party will be limited to fifteen minutes of supplemental jury *voir dire*.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and verdicts. The parties shall file any such joint set of instructions **14 days before trial**, identified as "Joint Jury Instructions and Verdicts." To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due **14 days before trial**.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before trial**; all blanks in form instructions should be completed and all brackets removed.

[6] In the joint pretrial statement, the parties state that "[d]efendants are entitled to recover their fees under California Civil Code § 1717[]" (Doc. No. 35 at 13), but do not indicate whether defendants will seek attorneys' fees and costs if they prevail at trial. Defendants are directed to indicate in their objections to this tentative order whether they will seek attorneys' fees if they prevail at trial and provide citations to substantive legal authority in support of any intention to do so.

Objections to proposed jury instructions must be filed **7 days before trial**; each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority. When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV. TRIAL BRIEFS

As noted above, trial briefs are due **7 days before trial**.

XXVI. OBJECTIONS TO PRETRIAL ORDER

Each party is granted **14 days from the date of entry of this order** to file objections to the same. Each party is also granted **7 days thereafter** to respond to the other party's objections. If no objections are filed, the order will become final without further order of this court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

IT IS SO ORDERED.

Dated: **July 27, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

**ATTACHMENT A**

Plaintiff's Witness List

1. Tiffany Lewis
2. Heubert Rivera
3. Carlos Rodrigues
4. Paul Pflug

**ATTACHMENT B**[7]

Defendants' Witness List

1. Tiffany Lewis
2. Heubert Rivera
3. Carlos Rodriguez
4. Paul Pflug
5. Milagros Gonzalez-Torres

---

[7] In the joint pretrial statement, defendants state that they "reserve the right to call any witnesses on Plaintiff's witness list and/or any other previously identified witnesses for purposes of rebuttal, including without limitation[,]" the five witnesses listed on this page above. (Doc. No. 35 at 13.) As discussed at the pretrial conference, in their objections to this tentative order, defendants are directed to submit a finalized list of all witnesses, including rebuttal witnesses, that they intend to call at trial. As explained above, the parties may be precluded from calling any witnesses at trial who are not included in the court's final pretrial order.

**ATTACHMENT C**

Plaintiff's Exhibit List

1. February 22, 2022 email with attachment (CLI_1645-1648)
2. March 3, 2022 email with attachment (CLI_4904-4905)
3. March 3, 2022 email with attachment (CLI_4898-4899)
4. March 3, 2022 email (CLI_4902-4903)
5. March 3, 2022 email (CLI_4900-4901)
6. April 25, 2023 email (CLI_1125-1126)
7. July 6, 2023 email (CLI_609)
8. July 6, 2023 email (CLI_602)
9. July 7, 2023 email (CLI_596-599 & CLI_596A)
10. February 21, 2024 demand letters (CLI_63-80)

**ATTACHMENT D**

Defendants' Exhibit List

A. Plaintiff's Exhibit 3 used during depositions in this action

B. Plaintiff's Exhibit 4 used during depositions in this action

C. Plaintiff's Exhibit 5 used during depositions in this action

D. Plaintiff's Exhibit 6 used during depositions in this action

E. Plaintiff's Exhibit 8 used during depositions in this action[8]

[8] Below defendants' Exhibit E reads "Rebuttal Exhibits" without any further explanation or corresponding exhibits. (Doc. No. 35 at 14.) The parties are directed to list in their objections to this tentative order any further exhibits that they intend to offer at trial. Any exhibits that are not listed in the final pretrial order may be excluded at trial.